FILED

# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

JUL 17 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| GUILLERMO GOMEZ-SANCHEZ, | No. 14-72506 |
| Petitioner, | Agency No. A092-924-179 |
| v. | |
| WILLIAM P. BARR, Attorney General, | ORDER |
| Respondent. | |

Before: Peter L. Shaw, Appellate Commissioner.

I

Background

Guillermo Gomez-Sanchez, a Mexican citizen, was charged with

removability and applied for withholding of removal and relief under the

Convention Against Torture ("CAT"). *See Gomez-Sanchez v. Sessions*, 892 F.3d

985, 988 (9th Cir. 2018). Gomez-Sanchez, who has schizophrenia and speaks poor

English, was detained for two-and-one-half years while his case was

administratively closed to obtain a competency evaluation. After a pro bono

attorney learned about Gomez-Sanchez's case and began representing him, an

Immigration Judge ("IJ") determined that Gomez-Sanchez was statutorily

ineligible for withholding of removal because he had been convicted of a

MH/Appellate Commissioner

particularly serious crime, and that an applicant's mental health as a factor in a criminal act falls within the criminal court's province and is not a factor to be considered in the particularly serious crime analysis. *Id*. The IJ also determined that Gomez-Sanchez was entitled to deferral of removal under the CAT. *Id*. at 989 n.2.

Gomez-Sanchez appealed the IJ's denial of withholding of removal. *Id*. at 988, 989. The Board of Immigration Appeals ("BIA") issued a published decision dismissing the appeal, and remanded for background checks needed for CAT relief. *Id*. at 988.

Gomez-Sanchez filed a petition for review of the denial of withholding of removal. *Id*. at 989. This court granted the petition, vacated the BIA's decision, and remanded to the BIA for further proceedings consistent with its amended opinion. *Id*. at 988, 989, 996-97. The court held that the agency must take all relevant information into consideration when making the particularly serious crime determination, including the individual's mental condition at the time of the crime, whether it was considered during the criminal proceedings or not, and that the BIA's interpretation of the Immigration and Nationality Act was not entitled to deference. *Id*. at 996-97. Gomez-Sanchez filed a petition for panel rehearing

requesting to change part of the court's opinion that cited a BIA decision then under review. The court amended the opinion and denied rehearing. *Id*. at 987.

Gomez-Sanchez filed a motion for attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. The government filed an opposition, and Gomez-Sanchez filed a reply. The court granted the motion and referred the fee amount determination to the Appellate Commissioner. *See* 9th Cir. R. 39-1.9.

II
Discussion

A. Attorneys' Fees

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Gomez-Sanchez requests $109,960.42 in attorneys' fees for 232.93 hours of work by five attorneys and one paralegal from the ACLU Foundation of Southern California and the ACLU Foundation of San Diego and Imperial Counties.[1] Gomez-Sanchez requests enhanced, prevailing market hourly rates of $710 to $785 for attorney Ahilan T. Arulanantham, $510 to $620 for attorney Bardis Vakili, and $450 to $475 for attorney Carmen Iguina. Gomez-Sanchez requests cost-of-living-

---

[1] The result of the requested hours multiplied by the requested hourly rates is $109,960.42. An unexplained $0.02 "time slip adjustment" is disallowed.

adjusted EAJA statutory maximum hourly rates of $190.06 for 2014, $190.28 for 2015, $192.68 for 2016, and $200.78 for 2018 for attorney Lorie Alexander, attorney Jonathan Markovitz, and paralegal Geneva Tien.

1. Enhanced Hourly Rates

The government objects to awarding enhanced hourly rates for Arulanantham, Vakili, and Iguina. EAJA provides that fees may be awarded based upon prevailing market rates for the kind and quality of the services furnished, except that attorneys' fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee. *See* 28 U.S.C. § 2412(d)(2)(A).

a. Special Factor Enhancement

Gomez-Sanchez requests enhanced hourly rates based on the special factor of the limited availability of qualified attorneys for the proceedings involved. *Id.* In support of the request, Gomez-Sanchez provides declarations by Arulanantham, Iguina, and experienced Los Angeles immigration attorney Stacy Tolchin and Los Angeles civil rights attorney Carol Sobel.

Enhanced hourly rates based on the special factor of the limited availability of qualified attorneys for the proceedings involved may be awarded where the

attorneys "hav[e] some distinctive knowledge or specialized skill needful to the litigation in question [that] can be obtained only at rates in excess of the [statutory] cap." *Pierce v. Underwood*, 487 U.S. 552, 572 (1988).

i. Distinctive Knowledge Or Specialized Skill

Gomez-Sanchez shows, and the government does not dispute, that Arulanantham has distinctive knowledge and specialized skill "in constitutional immigration law and litigation involving the rights of detained immigrants," as this court determined in awarding enhanced hourly rates in *Nadarajah v. Holder*, 569 F.3d 906, 912 (9th Cir. 2009), as well as at the intersection of criminal, immigration, mental health, and disability law, and that Vakili and Iguina have distinctive knowledge and specialized skill at the intersection of immigration and mental health law.

Arulanantham has 15 years of experience as an ACLU attorney litigating numerous cases involving the intersection of criminal and immigration law, as well as the statutory and constitutional rights of non-citizens. Vakili has 11 years of experience as an ACLU attorney representing individuals with mental disabilities and individuals subject to removal for criminal convictions in immigration proceedings. Iguina spent five years as an ACLU attorney working on many cases at the intersection of mental health and immigration issues.

Arulanantham was lead counsel in *Nadarajah*, where the court concluded that Nadarajah's indefinite detention was unreasonable, unjustified, and illegal; reversed the district court's denial of Nadarajah's habeas corpus petition; and ordered Nadarajah's immediate release. *See Nadarajah v. Gonzales*, 443 F.3d 1069, 1084 (9th Cir. 2006). Arulanantham was co-lead counsel, and Vakili and Iguina were co-counsel, in *Franco-Gonzales v. Holder*, 2013 WL 3674492, at *20 (C.D. Cal. 2013), where the court held as a matter of first impression under Section 504 of the Rehabilitation Act that detained mentally ill immigrants have a right to counsel. *Franco* resulted in an injunction requiring the government to identify and provide counsel to mentally ill immigrants in detention. *See Franco-Gonzalez v. Holder*, 2018 WL 8115423, at *1-2 (C.D. Cal. 2013). Later, the government voluntarily chose to apply the *Franco* injunction nationwide.

Arulanantham, Vakili, and Iguina were awarded the American Immigration Lawyers' Association Jack Wasserman Memorial Award for Excellence in the Field of Immigration Law for their *Franco-Gonzales* work. Arulanantham has received many other awards for his immigration work, including a MacArthur Fellowship, and he serves as a resource for immigration attorneys nationwide. Tolchin states that Arulanantham is "unquestionably one of the most skilled [immigration] litigators in the country," and that Arulanantham, Vakili, and Iguina

all have particular knowledge and specialized skill in immigration cases involving people with serious mental disorders.

### ii. Needful To The Litigation In Question

The government argues that Gomez-Sanchez has not shown that Arulanantham's, Vakili's, and Iguina's distinctive knowledge or specialized skill was needful to the litigation in question, or that "knowledge of foreign cultures or of particular, esoteric nooks and crannies of immigration law . . . [was] needed to give the alien a fair shot at prevailing." *Thangaraja v. Gonzales*, 428 F.3d 870, 876 (9th Cir. 2005). The government argues that Gomez-Sanchez's case was dictated by existing Ninth Circuit precedent and was not as novel or complex as *Nadarajah*, where Arulanantham's prevailing market hourly rates were awarded, and that Gomez-Sanchez's case did not involve Arulanantham's distinctive knowledge or specialized skill in constitutional immigration law and litigation involving detained immigrants' rights, as *Nadarajah* did. *See Nadarajah*, 569 F.3d at 913-15. The government argues that the court did not address Gomez-Sanchez's argument that the BIA's categorical bar against considering mental health in the particularly serious crime analysis discriminates against the mentally disabled in violation of the Rehabilitation Act, *see Gomez-Sanchez*, 892 F.3d at 997 n.11, and that only the Rehabilitation Act argument required the attorneys' distinctive

knowledge or specialized skill at the intersection of criminal, immigration, mental health, and disability law. The government's arguments lack merit.

Like *Nadarajah*, Gomez-Sanchez's case involved more than established principles of law with which the majority of attorneys are familiar, and more than a straightforward application of the rules of immigration law and appellate practice. *See Nadarajah*, 569 F.3d at 914; *Ramon-Sepulveda v. INS*, 863 F.2d 1458, 1462-63 (9th Cir. 1988). Gomez-Sanchez's case was novel and complex, as evidenced by the court's lengthy amended opinion holding that the BIA's published decision interpreting the Immigration and Nationality Act to establish the categorical bar was contrary to congressional intent, unreasonable, based on a flawed assumption, inconsistent with earlier BIA decisions, and not entitled to deference. *See Gomez-Sanchez*, 892 F.3d at 990-97. Indeed, the government argues elsewhere in its opposition that its position was substantially justified because the BIA decision was "a novel but credible extension or interpretation of the law."

Arulanantham's distinctive knowledge or specialized skill in constitutional immigration law and litigation involving detained immigrants' rights was necessary to this litigation, as it was in *Nadarajah*. Moreover, Arulanantham's distinctive knowledge or specialized skill at the intersection of criminal, immigration, mental health, and disability law, and Vakili's and Iguina's

distinctive knowledge or specialized skill at the intersection of immigration and mental health law were needed to give Gomez-Sanchez a fair shot at prevailing here. Although the court determined in light of its disposition not to address the Rehabilitation Act argument, *see Gomez-Sanchez*, 892 F.3d at 997 n.11, Gomez-Sanchez's attorneys' distinctive knowledge or specialized skill was necessary to every argument presented, not only the Rehabilitation Act argument.

As Tolchin states, even though the court decided Gomez-Sanchez's case under existing law, the preparation and presentation of Gomez-Sanchez's briefs and oral argument, which effectively demonstrated to the court that the BIA's decision was not entitled to deference, required the attorneys' distinctive knowledge or specialized skill regarding particular, esoteric nooks and crannies of federal immigration and state criminal law. *See Thangaraja*, 428 F.3d at 876. Specifically, Gomez-Sanchez's case involved an interplay of the laws governing the consideration in removal proceedings of whether an individual has been convicted of a particularly serious crime and is a danger to the community, the question whether reliable, relevant evidence of mental health at the time of a crime must be considered in removal proceedings, the mens rea element of criminal offenses, and the insanity defense in criminal cases. *See Gomez-Sanchez*, 892 F.3d at 990-97.

iii. Not Available Elsewhere At Statutory Rate

The government argues that Gomez-Sanchez has not shown, and Tolchin's declaration does not state, that Arulanantham's, Vakili's, and Iguina's distinctive knowledge or specialized skill was not available elsewhere at cost-of-living-adjusted EAJA statutory maximum hourly rates, citing *United States v. Real Prop. Known As 22249 Dolorosa St.*, 190 F.3d 977, 985 (9th Cir. 1999) and *Ramon-Sepulveda*, 863 F.2d at 1463. In the government's cases, however, courts had determined that distinctive knowledge or specialized skills were not needed for the litigation. *Id.*

Also, Gomez-Sanchez submits in reply a second declaration by Tolchin, stating that "I know of no one with expertise in the specialized subject matter needed to litigate this case who would have been available to do so at the statutory EAJA rate of $200.78 an hour. I am confident that no such person exists." Tolchin's second declaration satisfies Gomez-Sanchez's burden to show that qualified counsel is not available elsewhere at the cost-of-living-adjusted EAJA statutory maximum hourly rates. *See Nadarajah*, 569 F.3d at 915 (citing *Atl. Fish Spotters Ass'n v. Daley*, 205 F.3d 488, 493 (1st Cir. 2000)); *Pirus v. Bowen*, 869 F.2d 536, 542 (9th Cir. 1989).

iv.  Prevailing Market Hourly Rates

The government argues that Gomez-Sanchez has not shown that the requested enhanced hourly rates of $710 to $785 for Arulanantham, a 1999 law school graduate; $510 to $620 for Vakili, a 2006 law school graduate; and $450 to $475 for Iguina, a 2010 law school graduate, are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  The government argues that Sobel's declaration is not probative of prevailing market hourly rates for immigration litigation, because her expertise is in complex civil rights and class action litigation and her opinion relies on hourly rates for large commercial law firms engaged in complex business litigation.  The government argues that Tolchin's declaration does not state the prevailing market hourly rate for immigration practitioners in the relevant community, or her own hourly rate. The government's arguments lack merit.

The market for Gomez-Sanchez's attorneys' services is defined more broadly than immigration cases.  *See Blum*, 465 U.S. at 893; *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010); *Van Skike v. Dir., OWCP*, 557 F.3d 1041, 1046-47 (9th Cir. 2009).  "[T]he proper scope of comparison is not so limited, but rather extends to all attorneys in the relevant community engaged in

'equally complex Federal litigation,' no matter the subject matter." *See Prison Legal News*, 608 F.3d at 455 (quoting *Blum*, 465 U.S. at 893)).

Gomez-Sanchez has satisfied his burden to show that the requested hourly rates are in line with prevailing market hourly rates in the community for similar services by comparable attorneys. *See Blum*, 465 U.S. at 895 n.11. Arulanantham states that the ACLU polls Los Angeles attorneys and then sets its attorneys' hourly rates "at or near the low end of the spectrum." Sobel states that she has analyzed the fees charged by and awarded to Southern California attorneys in a variety of civil rights and other contexts. In Sobel's opinion, Gomez-Sanchez's requested enhanced hourly rates are reasonable. In Tolchin's opinion, the requested enhanced hourly rates are "well within the range of reasonable rates for attorneys of their skill, experience, and reputation in Southern California."

Sobel, a 1978 law school graduate, states that her 2018 hourly rate is $990. Tolchin, a 2001 graduate, replies in her second declaration that her 2018 hourly rate is between $500 and $630. The requested hourly rates for Gomez-Sanchez's attorneys are in line with Sobel's and Tolchin's hourly rates. In addition, Sobel provides many specific examples showing that Gomez-Sanchez's requested enhanced hourly rates are in line with hourly rates requested and awarded for similar services by comparable attorneys in Southern California, and she supports

these examples with the fee requests and awards accompanying her declaration. This court relied in part on a declaration by Sobel to award $300 to $335 enhanced hourly rates for Arulanantham's 2004 to 2006 work in *Nadarajah*, 569 F.3d at 916-918.

The government submits nothing to refute Arulanantham's, Sobel's, and Tolchin's declarations, and fails to meet its own "burden of rebuttal that requires submission of evidence . . . challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992). Gomez-Sanchez's requested enhanced hourly rates are reasonable, and they are awarded. *See Blum*, 465 U.S. at 895 n.11; *see also Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (court also may rely on its own knowledge of prevailing market hourly rates).

    b.  Cost-Of-Living-Adjusted EAJA Statutory Maximum Hourly Rates

The government does not object to the requested cost-of-living-adjusted EAJA statutory maximum hourly rates for attorneys Alexander and Markovitz, and they are awarded. But the government objects to the requested cost-of-living-adjusted EAJA statutory maximum hourly rates for paralegal Tien, arguing that Gomez-Sanchez has not provided evidence of prevailing market hourly rates for

paralegals and that a paralegal should not be compensated at the same hourly rates as attorneys.  This objection lacks merit.

The requested cost-of-living-adjusted EAJA statutory maximum hourly rates for paralegal Tien are in line with prevailing market rates for comparable paralegals, and they are awarded.  *See Blum*, 465 U.S. at 895 & n.11.  According to their website, after serving as a legal assistant at the Federal Public Defender's office, Tien joined the ACLU of Southern California as a paralegal in 2007, and she is now the director of advocacy support.

Arulanantham states that the requested cost-of-living-adjusted EAJA statutory maximum hourly rates for paralegal Tien are comparable to hourly rates awarded for paralegals in other EAJA litigation.  The court may also rely on its own knowledge of prevailing market hourly rates for paralegals.  *See Ingram*, 647 F.3d at 928.  Moreover, EAJA caps paralegal and attorney fees at the same rate; Congress was not troubled that paralegals' fees could be recovered at a greater percentage of their full market value than attorneys fees' could be recovered under EAJA.  *See Richlin Sec. Serv. v. Chertoff*, 553 U.S. 571, 587-88 (2008).

2.  Reasonably Expended Hours

Gomez-Sanchez requests 232.93 hours for the attorneys' and paralegal's preparation of a petition for review, a motion to proceed in forma pauperis, a

14

motion to stay proceedings pending completion of the remand, two status reports, four notices regarding counsel, six motions for extensions of time or supplements to such motions, a 10,367-word opening brief, a 6,952-word reply brief, a hearing acknowledgment notice, a supplemental authorities citation, a letter to the court, a petition for panel rehearing, a fee motion, and a fee reply, as well as for Vakili's appearance at oral argument in San Francisco.

Arulanantham states that he analyzed the time records and eliminated duplicative or unnecessary hours, including some of Alexander's time for researching issues not critical to the fee motion. The government objects to the requested 232.93 hours, arguing that they are excessive and should be substantially reduced. (Gomez Sanchez originally requested more hours but, in reply to certain objections by the government, Gomez-Sanchez submitted corrected time records and reduced the requested hours.)

a. Level Of Success

The government argues that Gomez-Sanchez's requested hours should be reduced, because the court did not address Gomez-Sanchez's argument that the agency's determination that mental health can never be considered as a factor in the particularly serious crime determination violates the Rehabilitation Act, 29 U.S.C. § 794. *See Gomez-Sanchez*, 892 F.3d at 997 n.11. The government argues

that Gomez-Sanchez's fee award "should be reduced to represent the portion of his counsels' efforts that led to his success." This argument lacks merit.[2]

"Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not sufficient reason for reducing a fee. The result is what matters." *Hensley*, 461 U.S. at 435; *see Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1173 (2019). Thus, when a party prevails on only some claims, the court must consider whether: (1) the party failed to prevail on claims that were unrelated to the claims on which the party succeeded, and (2) the party achieved a level of success that makes the hours reasonably expended a satisfactory basis for the fee award. *See Hensley*, 461 U.S. at 434; *Ibrahim*, 912 F.3d at 1172.

Gomez-Sanchez's prevailing arguments and the unaddressed Rehabilitation Act argument were related because they involved a common core of facts or were based on related legal theories. *See Hensley*, 461 U.S. at 435; *Ibrahim*, 912 F.3d at

---

[2] Contrary to the government's argument, *Hardisty v. Astrue*, 592 F.3d 1072, 1077 (2010), is not relevant to the reasonably expended hours determination. In *Hardisty*, the district court denied EAJA fees because the government's position was substantially justified regarding the prevailing issue. *Id*. at 1075. This court held that the district court was not required to evaluate whether the government's position was substantially justified as to unaddressed issues. *Id*. at 1076-78. Here, in contrast, the court has held that the government's position was not substantially justified, and the question whether fees may be recovered for related issues is subject to a different, well-developed analysis.

1172.  The focus is on whether the claims arose out of a common course of conduct.  *Id.*  The relief sought on Gomez-Sanchez's unaddressed Rehabilitation Act argument was not intended to remedy a course of conduct "entirely distinct and separate" from the course of conduct that gave rise to the injury upon which the relief granted was premised -- the denial of withholding of removal based on a determination that Gomez-Sanchez was convicted of a particularly serious crime that did not consider his mental health as a factor.  *See Ibrahim*, 912 F.3d at 1174 & n.23; *O'Neal v. City of Seattle*, 66 F.3d 1064, 1069 (9th Cir. 1995).  As Tolchin states, Gomez-Sanchez's attorneys might have violated their ethical duties if they failed to raise the Rehabilitation Act as an alternative ground for relief, as that statute was the source of the most significant change in the law governing people with serious mental disorders in the immigration context.  *See Ibrahim*, 912 F.3d at 1177.

Gomez-Sanchez achieved full relief based on his prevailing arguments -- the court granted Gomez-Sanchez's petition for review, vacated the BIA's decision, and remanded for further proceedings consistent with the amended opinion.  *See Gomez-Sanchez*, 892 F.3d at 996-97.  The precedential BIA decision affected every person with a mental disorder who seeks withholding of removal and is subject to a particularly serious crime determination, underscoring Gomez-Sanchez's

achievement. *See Ibrahim*, 912 F.3d at 1178. Courts have uniformly declined to apportion fees where full relief was granted on some claims, rendering it unnecessary to reach related claims. *See Ibrahim*, 912 F.3d at 1173. Also, the Rehabilitation Act argument was not lost or unsuccessful; the court decided it was unnecessary to address it. *Id*. Because Gomez-Sanchez obtained excellent results on review, his attorneys should recover a fully compensable fee. *See Hensley*, 461 U.S. at 435. Gomez-Sanchez's level of success makes his attorneys' hours reasonably expended on the litigation as a whole a satisfactory basis for the fee award. *See Hensley*, 461 U.S. at 434; *Ibrahim*, 912 F.3d at 1178.

b. Correspondence Regarding Gathering Fee Records

The government objects to a portion of 1.33 hours block billed by Arulanantham in part for correspondence regarding gathering fee records, arguing that the government should not have to pay for time spent seeking to reconstruct Iguina's lost records and that the work was clerical in nature. *See Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989). Gomez-Sanchez replies that most of the record-gathering time was billed by an administrative assistant and not included in the fee request. Gomez-Sanchez contends that it was most efficient for Arulanantham to perform this particular work, because of his unique awareness of who worked on the case and when they did so.

Nevertheless, the record-gathering work was not legal in nature, and it may not be billed at an attorney's hourly rate, regardless of who performed it. *Id*. Arulanantham block billed the work with other tasks, so the court cannot determine what portion of time he spent on it. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007). The entire 1.33 hours ($1,044.05 in fees) are disallowed.

### c. Moot And Oral Argument Travel

Gomez-Sanchez objects to 11.5 hours billed by Vakili for moot and oral argument travel, arguing that the time should be disallowed or awarded at half of the EAJA statutory maximum hourly rate. Gomez-Sanchez argues that it is not clear whether Vakili worked on this matter or worked at all during the travel, citing *Furtado v. Bishop*, 635 F.2d 915, 922 (1st Cir. 1980). In reply, Gomez-Sanchez submits Vakili's declaration stating that he worked on this case during 4.83 hours of train travel to and from San Diego to Los Angeles for the moot, preparing for the moot and following up on matters arising from the moot. Vakili also states that he worked on the case during 3.67 hours of plane travel from San Diego to San Francisco for the oral argument, finalizing his preparations for oral argument.

Vakili's 8.5 hours of travel while working on this matter were reasonably expended, and these hours are awarded at Vakili's enhanced hourly rate. *See Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1992); *Henry v.*

*Webermeier*, 738 F.2d 188, 194 (7th Cir. 1984). Because Vakili does not state if he worked on another case during his 3 hours of return travel from the oral argument, these hours ($1,770 in fees) are disallowed. *See Henry*, 738 F.2d at 194.

      d.  Other Objections

The government's objection to Iguina's billing of 3.17 hours and 3.83 hours for the same work on the same date lacks merit. Iguina reasonably expended 7 hours in one day reviewing the administrative record and relevant case law and drafting a litigation memorandum for approval of the litigation. *See Hensley*, 461 U.S. at 433-34; *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). The government's objection to discrepancies in the hours that Arulanantham and Vikili billed for the same activities also lacks merit. In reply, Vakili states that Arulanantham left moots or co-counsel calls earlier than he did.

The government argues that Iguina's reconstruction of 40 hours based on the other attorneys' time records, after her post-August 2015 time records were lost, makes it difficult to determine the hours' accuracy or reasonableness. The government also questions the reliability of the recordkeeping, and requests reduction of the fee award on this ground. These arguments lack merit.

Although the court prefers contemporaneous records, they are not absolutely necessary. *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000).

"Fee requests can be based on 'reconstructed records developed by reference to litigation files.'" *Id*. (quoting *Davis*, 976 F.2d at 1473). Iguina states she conservatively estimated that she spent 40 hours reviewing the agency record, researching the relevant case law, and drafting the opening and reply briefs. Because the time claimed is corroborated by the other attorneys' time records, the court's docket, and Gomez-Sanchez's pleadings, the reliability of the recordkeeping is not reasonably in question, and no reduction is warranted on this ground.

      e.  Reasonably Expended Hours Summary

A review of the time records, the docket, the briefs and other pleadings, and the oral argument reveals no excessive, redundant, or otherwise unnecessary hours. *See Hensley*, 461 U.S. at 434. No other clerical work was billed at attorney or paralegal hourly rates. *See Jenkins*, 491 U.S. at 288 n.10. Gomez-Sanchez's attorneys and paralegal reasonably expended the remaining 228.6 hours, and these hours are awarded. *See Hensley*, 461 U.S. at 433-34; *Moreno*, 534 F.3d at 1112.

    3.  Attorneys' Fees Summary

Gomez-Sanchez is awarded $107,146.37 in attorneys' fees.

B.  Costs

Gomez-Sanchez requests $57.52 in costs for a FedEx delivery to the court and for Pacer research.  The government argues that these costs should be denied because Gomez-Sanchez did not file a timely bill of costs, citing Federal Rule of Appellate Procedure 39(d)(1) and *Haselwander v. McHugh*, 797 F.3d 1, 2 (D.C. 2015).  This argument lacks merit.  Only certain limited costs for copying the briefs and excerpts of record are taxable in a cost bill.  *See* Fed. R. App. P. 39(c); 9th Cir. R. 39-1.1 - 1.3.  Gomez-Sanchez's requested costs are non-taxable, and they may be included in an EAJA fee award.  *See Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 579-82 (9th Cir. 2010); *Trs. of Constr. Indus. & Laborers Health & Welfare Trust*, 460 F.3d 1253, 1257-59 (9th Cir. 2006).  Gomez-Sanchez's requested non-taxable costs are reasonable, and they are awarded.

III
Conclusion

Pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, attorneys' fees and non-taxable costs in the amount of $107,203.89 are awarded in favor of Guillermo Gomez-Sanchez and against William P. Barr, Attorney General.

This order amends the court's mandate.